Okay, well, they they touted Mr. Bovichek touted your virtues here, so we'll see just see how well you do very good Okay, may it please the court In this case miss Davis went to trial on three separate counts each related to pseudoephedrine manufacturing in the methamphetamine at trial The defense had one witness That was her Treating pulmonologist for the last 15 or so years Prior to trial the pulmonologist had prescribed to miss Davis four months worth of pseudoephedrine She suffered from COPD chronic obstructive pulmonary disease He classified it as severe It's undisputed Several of the government witnesses testified that they witnessed miss Davis have severe breathing episodes longtime neighbor longtime friend They also testified To help her get through Those long those breathing episodes. She took pseudoephedrine pills Which she had purchased legally At the store With Tumblers me as a result of this prescription No, she had She had been purchasing over the five-year period The stuff that she pseudoephedrine Okay, okay what? tell me the circumstances of this because apparently there was the doctor and the PA testifying they really didn't help your client because they they talked about that. They wouldn't recommend pseudoephedrine Because it dries out the lungs for somebody with COPD or something. What's that all about? I'm sorry your honor, but that's not what was testified to Immediately before opening statements the court Gave its ruling and it was a definitive ruling and I've set it forth and page 12 of the addendum Quote The prescription that he meaning dr. Painter Wrote recently is not admissible because it has no relevance If he starts getting into expert testimony as opposed to just stating his treatment of miss Davis his diagnosis and the like Then it is objectionable and the court will not allow it in the prescription the prescription and Which was why why would he prescribe outside the? The conspiracy time period note so correct. I'm taking a diversion here But so why is that relevant a prescription you had? After the conspiracy it directly corroborates Why would a her pulmonologist? Prescribed pseudoephedrine to her if it wasn't necessary It directly corroborated our sole defense Which is she didn't buy the pseudo to manufacture meth Oh, by the way, there was absolutely no evidence from any witness that she had ever manufactured sold methamphetamine The the testimony and the prescription from the pulmonologist That he prescribed four months worth of pseudoephedrine to her in October of 2015 Went directly to our defense the judge Judge redetermined that because it occurred Outside of the conspiracy scope. It wasn't admissible and we respectfully disagree with that finding however the government When it was cross-examining, dr. Painter said asked well you never prescribed pseudoephedrine Why is he on the stand? He's on the stand to confirm one that miss in the defense case. Yes. He was our only witness He confirmed that one she has COPD What the symptoms of COPD are? We couldn't ask him anything about Pseudoephedrine or How pseudoephedrine would assist the breathing episodes that was precluded from Our case has it not been disclosed earlier? Well, we had disclosed every page of medical records that we had obtained from dr. Painter's office No, I mean he hadn't been Had he been disclosed as an expert and what his opinions were Technically no, he was not disclosed as an expert even though What I recall the district court said was you hadn't disclosed it But then During his cross-examination. Let's assume that the district court was correct in saying that that was Not disclosed and so you can't talk about that Their government in his cross-examination then asked the very question that it sought to exclude But they limited it to the course of the conspiracy. They asked dr. Painter Well, you never prescribed pseudoephedrine between the years of 2010 and 2015. Did you know? but he couldn't say that Two months later I gave her four months worth of pseudoephedrine But that wasn't fair She could have purchased the pseudoephedrine for self medication Under the limits herself, correct, correct So you wanted to establish with him that pseudoephedrine was a drug Whether you purchased it over-the-counter or by prescription that was beneficial to her as a With her affliction that and did she testify that That she used it and was self medicating with it or was there any evidence of that? There was significant evidence from neighbors Longtime friend that she suffered the witness described it as her breathing episodes from COPD would be like as if someone had just ran a long race and When she had these episodes they witnessed That she had consumed she had taken pills Pseudoephedrine pills to assist her to be able to breathe normally again had In all of the medical records you say that were were produced had dr. Painter ever Suggested or discussed the use of pseudoephedrine prior to prior to His having prescribed it here. No So, how does that? How does that prevent you from from presenting a complete defense I Was if it was so important and he had treated her for a number of years for the COPD with the nebulizer and Post conviction He decides oh, I'm gonna I'm gonna give her a prescription. How is that? How is that? How is that kept her from a complete defense? Pseudoephedrine is a medication that one can buy over-the-counter and that's what happened that was that's what miss Davis did for five years But there's no mention in the medical records that she had told dr. Painter that she'd used it in the past or that he'd Suggested it. That's correct. Okay When she was placed on pretrial release would it have been Risky for her to go to the store and buy pseudoephedrine Yes, she probably would have her pretrial release probably would have been revoked. So she went to dr. Painter and obtained the pseudoephedrine Who had been her doctor during all this time for the COPD, correct There was a there and in the brief, there's a entire laundry list of medications that Miss Davis was obtaining an important point is In the government's brief. It indicates that the defense has forfeited its Ability to raise this issue on appeal because we didn't Make we didn't introduce this prescription until at the close of evidence The the the facts are very very clear The court had this prescription prior to trial We discussed it at the pretrial conference The government filed significant pleadings attempting to keep it out. It was discussed Judge Reed had entered an order prohibiting the party's discussing anything until during jury selection and it was until Immediately before opening statements where she gave her ruling that it wasn't coming in Well, I thought it even had exhibit number exhibit F. Correct So Somebody Marked and then I think was Discussed pretrial anyway when it was precluded, right? Correct. Well, I wouldn't worry about that. Okay So the government Opened the door with dr. Painter when it asks you never prescribed Pseudofedrin during these specific times. Did you and of course he has to answer no In rebuttal That was our only witness was dr. Painter. He directly corroborated. He would have directly corroborated her Defense, which is that she didn't buy the pills to manufacture meth She bought the pills as was testified to but he wouldn't say that he just he would just say he prescribed them later That would have been what we would have been able to argue, right? Look at what? Dr. Painter did he gave a prescription for? Pseudofedrin we couldn't argue that because there was no evidence of that in front of the jury. Would the doctor have Testified that he would have advised her as her medical Practitioner to buy pseudofedrin over-the-counter and use it because it would be a heck of a lot cheaper than Buying it probably prescription wise was he prepared to testify that he Would have told her that or did tell her that or how was there anything like that? No, there was not The Tested the testimony. I have a handwritten note here something about the doctor and a PA did a PA test in rebuttal test plain Rebuttal so in rebuttal after we called dr. Painter as our only witness the Prosecution had miss Catherine book who up until that minute. I hadn't been aware of I'm handed a stack of 51 pages worth of medical records and saying she's going to testify Regarding your clients. Did she treat her your client? She treated her for 10 to 15 years for COPD She testified now. This is a physician's assistant The government asked her now. Did you ever? Tell her About purchasing pseudofedrin. She said no is this within that still within the conspiracy timeframe? Yes And so immediately after that I asked to recall dr. Painter because we have all this evidence now that no medical professional ever prescribed or Recommended that miss Davis take pseudofedrin In the defense's position that opened the door to allow this evidence that we have to come in We asked to recall dr. Painter that was denied as untimely we made that request after the testimony of Catherine book the PA and After the close of the evidence immediately after the close of evidence. We had asked to reopen and recall. Dr. Painter Then we also asked for a mistrial based upon the government opening the door and then Us not being able to present that Prescription wasn't there wasn't there some out of the presence of the jury? testimony with dr. Painter Vis-a-vis the your recall and so forth that he Somewhat backed away from Pseudofedrin as a applicable drug here. What were two? Nothing of that sort. No, he was not recalled. Okay. He was cross-examined by the government's Was it the PA that said that it's pseudofedrin is yes contrary indicated. Yes, the PA testified it dries up the lawyers Dr. Painter did not Testify to that. No, then my notes wrong The PA was asked by the government about well, you never prescribed pseudofedrin. No, why not? It dries up the lungs So based upon And I've set forth each element Miss Davis was charged with Conspiracy to manufacture meth and that the crux of the evidence for that conspiracy was the pseudofedrin logs she was Charged with Possessing a suit. I'm interrupting minute because I might think slowly Let me get back kind of what just beam was asking. Was there ever an offer proof that you made? That dr. Painter would challenge that Statement that that pseudofedrin would have been a contra indicated there was never an offer proof with dr. Painter period We had our definitive ruling from the court as to what would be allowed and what would not be allowed Well, but you have an absolute right to do an offer of proof I mean if you'd asked for it probably had an obligation to make an offer of proof. Well the when I have a definitive ruling from the court saying that this is not coming in and I have the prescription as an offer of proof exhibit I Think that rule 103 states It's only when it's not apparent from the context of the exhibit that an offer proof should be made When you say the door was when you say the door was opened on the cross-examination of dr. Painter Did you did you try to ask your questions on redirect? I objected and and thank you for raising that the government states Well, mr. Sheets didn't object to it. So it's okay. That's not true The transcript reflects that I objected to those questions. I my objection was outside the scope of direct That's what my objection was to but once that happened. Did you try to ask? I'll paraphrase them as your questions on redirect. I did not did you approach the court and say they've opened this door. I did not I Attempted to recall him, right? Well, but in redirect you might have well you know this hindsight, but take that prescription exhibit f up there and cross-examined her on on that and Said well, wait a minute. Here's a medical doctor with a medical degree. That's just prescribed it But we had a definitive ruling in my opinion Even it even a district judge needs a little help once in a while from Well, thank you, I'll give you a minute rebuttal so be prepared Morning again, mr. Favre check. Good morning. May it please the court counsel a few Before I begin a few points of the record, I would like to correct The defendant was indicted on July 29th And the prescription was received on October 28th some months later So this was not a case of someone who immediately went in to get a prescription to avoid problems with pretrial release Second To be clear the district judge after the conclusion of the government's rebuttal testimony Did offer the defendant the opportunity to present sir rebuttal evidence That opportunity was declined It was only after the evidence closed we were getting right ready for jury instructions. The witnesses were gone that The defendant moved for a mistrial and sought to recall Dr. Painter. Well, let's cut to the chase and that is you're putting the PA on and I Don't care about the rest of it, but getting to the point asking her about And I haven't read the testimony, but it since asked her About use of pseudofedrin for COPD and Mr. Sheets says well, wait a minute. That's not fair because it wasn't brought up and and he was barred from getting into that. So Why is it fair and and how did that those circumstances arise? sure, and if I may I have the transcript right here and I have the Offending allegedly offending statements from both. Dr. Painter and dr. Book What dr. Painter testified was He said pseudofedrin certainly wasn't in any of my notes and certainly would not recommend it Specifically for the treatment of COPD or asthma. That's page. So then I know it was right. Yeah, that's page 40 of the transcript of his testimony and then with respect to our rebuttal witness the PA Ms. Book She said COPD you don't want to dry up the lungs. So it pseudofedrin would be contraindicated. That's page 47 The short answer to your question. Let me back up. What was the question? Yes, the question was why not you try this? Yes. Okay. So what was your question? Why not? Well, wasn't that what was the question or answer before that the question before that was now this case concerns the time period August of 2010 to June 20th of this year and she's treating her during this time. Yeah Well, that's the charge conspiracy and she treated her during that time frame Did you tell Lisa Davis to use up to three boxes of pseudofedrin a month on a continuous basis? She answers never I asked why not She said COPD you don't want to dry up the lungs. So it pseudofedrin would be contraindicated When you left out an important word, maybe COPD for asthma based upon asthma Yeah, right, right At the end of the day the short answer to you why is this fair your honor Respectfully disagree with mr. Sheets. First of all that this was a firm definitive ruling as this court's cases require prior to trial We've talked about that at length in our brief, but more importantly, what did the government? seek to Not go into Basically, we had made very clear At both the final pretrial conference and in a filing and amended trial brief What happened here was right on the eve of trial pretty much we find out about this prescription It was not written till the end of October We got it on November 5th, and we were exchanging witnesses Lists on November 10th had the final pretrial on November 12th We took respectfully. We think a conservative liberal view on this and said, you know, look you can You're treating physician can testify as a treating physician He can talk about what he observed what he recommended or didn't recommend to the defendant Why he did or didn't and But that it just needed to be limited to the time frame at issue in the case And that's why that that question I read to your honor prior to the why not our Questioning when one goes through this we very much tried to limit it to that Now the judge didn't issue a final ruling on on this But both parties I think it was it was The the judge did We knew where it was going. It seemed like the judge was not going to be inclined to let in the prescription I know that the the one statement that Mr. Sheets sees on seizes on from the colloquy at the jury selection The judge said the prescription that he wrote recently is not admissible because it has no relevance. Let me ask this you're not gonna stand on Exhibit F not being properly preserved as an issue. Are you is that enough of intimidating question? We do stand on it your honor We we don't think under the rules of evidence that it was properly preserved the It came up prior to trial. The reason it was marked the way this proceeded was The judge specifically said I don't think that's timely but I'll let you file it Anyway, when I tried cases if you made a motion in lemonade and you you didn't On some evidence and you didn't and I'm sure judge beam tried cases like if you didn't renew it at trial you lost it That's not the rule anymore. And so anything that comes up that might be called a motion in lemonade It's in the record. I mean, that's the new rules So, that's what that's That's why I'm thinking this sounds a lot like a motion in lemonade here that you guys were arguing about And under the new rules, that's an evidence. I mean, it's in evidence for review it's true your honor the the reason there's not a Judge Reid often does written orders on motions in lemonade will have motions in lemonade The reason that didn't happen here was of the because of the late disclosure I mean this was brought to the attention by the government in its amended trial brief after receiving The prescription among a bunch of other records from the defendant And we we we filed we were the ones who attached that to our amended trial brief And so the the defendant's citation of this in the record is to our amended trial brief, which is a bit odd I would just Not to belabor the issue but at the final pretrial conference the judge said I'm not prejudging this Immediately after the admittedly pretty clear statement from the judge that the prescription that he wrote recently is not admissible because it has no Relevance. She then talking about the expert testimony says I can't rule in advance on those questions and This issue of the expert testimony. What would dr. Painter have testified on that? We certainly don't have any offer of proof and we do not have a definitive ruling frankly, we don't know what he would say what we Do know from the cross-examination from both of them is that? It seemed to have been contra indicated Going back to the post indictment prescription what we call it this prescription is Not relevant under 401 and its probative value is substantially outweighed by confusion of the issues Misleading the jury and so forth under 403 It is as the case law recognizes highly suspect Simply by virtue of its timing Recall the timeline your honors This was written four months after the end of the charge conspiracy three months after Indictment and less than a month before trial This court has been rightly skeptical of similar evidence. The government could not find a case involving a prescription for pseudoephedrine written after Indictment but by analogy found cases involving amended tax returns or tax returns that were filed after indictment serving the same purpose that is Trying to show that the requisite level of intent didn't exist during the the time period charged in the indictment Fairness to the defendant This was probably a period of time when she was precluded from buying Pseudoephedrine of any amount over-the-counter, right? That may be have been a condition of her pretrial release. I'm not have needed a prescription during that period of time I don't believe there's any evidence in the record of that second conclusion as The court has indicated and mr. Indicated there is no law requiring a prescription for pseudoephedrine in the state of Iowa Rather, there are just certain limits on the quantities that you can can purchase or how fast you can purchase it the two cases that we rely on in our brief rad key and GM Balvo both involved tax returns the post indictment filed tax returns The GM Balvo case was like this case a constitutional an asserted violation of the Constitutional right to present a complete defense and that is how the argument is phrased here on appeal in GM Balvo the court considered this sort of post indictment evidence in the context of the right to present a complete defense and Held that there was no unfettered right to offer testimony that is otherwise inadmissible under the standard rules of evidence and what's remarkable about the case that we have here at bar was We didn't just have Suspicious timing but when looks at the medical records themselves that came with the prescription They made clear that she had come to the doctor Not necessarily with a complaint about some health issue or ailment, but rather that she was being investigated for pseudoephedrine abuse this is also attached to our amended trial brief where exhibit F is as well and The doctor says in the records quote I can prescribe small amounts of pseudoephedrine to see if this would be helpful to her and minimize suspicion of diversion The doctor expressly said that Also, the records made clear that he was not prescribing it for COPD, but rather for seasonal Allergic rhinitis, which wouldn't square with a defendant's position that she needed to consistently Take large amounts of pseudoephedrine for five straight years Seasonal is that because you're allergic to some About now small I I presumed spring and fall, but of course we didn't Hear from the doctor on that specific issue the Other thing was the defendants stated reason judge pressed. Mr sheets at the colloquy right before the jury selection about why this could be relevant and Mr. Sheets said I think the evidence is going to show that because miss Davis was receiving the heat from law enforcement In buying it and ingesting pseudoephedrine. That's one of the reasons he prescribed it because he recognized it helped this evidence is not relevant and to the extent it is Very marginally relevant. It's Dane the danger of confusion of the issues outweighed it and the court should not reverse the jury's conviction for want of that evidence Going back to the Constitutional claim in which this is framed The seminal case in this area is the Holmes case at the Supreme Court That was what the Supreme Court ruled was an arbitrary rule of evidence that banned a defendant From presenting evidence of a third party's guilt if there was forensic evidence in the record tending to show that the defendant was guilty It was just a bright line arbitrary rule in in the words of the Supreme Court Judge beam you authored your honor authored a case called West Which talked about this a little bit and on page 10 19 of that case Wrote the constitutional right to this defense does not entitle The admission of otherwise unadmissible evidence and I'm paraphrasing that What we have here we cannot find a case that holds that the application of the federal rules of evidence for Basic relevancy Is applied arbitrarily and would violate the Constitution of the United States rather This was a weighing decision if the court finds that judge made a Final definitive ruling it was a weighing decision. It was not an arbitrary Application of some rule Unless there are any further questions. I see my time is about up Okay. Thank you. Thank you Hey, mr. Sheets give you a minute That's all I need your honors one minute There's a case from this a circuit says absent a cold Headache or sinus problems there are remarkably few things you can do with pseudofedrin except make illegal narcotics Absent a cold headache and sinus problems. Well in this case we had COPD chronic and severe The doctor in his notes. He wasn't allowed to testify to this because it would have went to his treatment But he said in his medical reports that were given to the prosecutor. I Prescribed pseudofedrin to her To divert this Prosecution. I can't remember the exact words. Mr. Babich. I've just quoted for them That supports. Mr. Babich is somehow implying that he mr. Dr. Painter was somehow in Collusion yes, that's a ridiculous statement. The second thing goes to this offer proof issue Why wasn't an offer proof of dr. Painter? Done. Well, there are several ways to do an offer proof and if the court looks at The colloquy Judge Reed asked me Well, what is this judge going to testify to and I set forth what he would testify to including? He's going to explain why he prescribed pseudofedrin and why pseudofedrin helps people with COPD That Counsel's off of proof the prescription and The definitive ruling that it's not coming in. I Think Any experienced lawyer would take that as okay, we need to move on To what our defense is going to be now Thank you very much. I Thank you both for your arguments. Was that our last argument today? Okay, well, I'm gonna take a moment of personal privilege here to Just thank the lawyers for coming over from Iowa as you note here judge Rossiter's and one of our newer newest district judges here in Nebraska, and if you don't know he was a law clerk for Judge Bean and So we took this opportunity for three, Nebraska judges to sit here and try and hear your arguments Which required us to get some cases outside of Nebraska, so I thank you for coming to Nebraska and when we have cases no more It's not unusual that we bring cases over but usually from Des Moines or Sioux City I don't know quite how we got so far away, but I want to thank you for coming It's also a matter That this is my last week is sitting as a judge and so I'm just really happy to see mr. Sheets who I